UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

SOUTHERN FINANCIAL GROUP, LLC,

    Plaintiff,

v.                                Case No.: 12-CV-848

MCFARLAND STATE BANK,

    Defendant.

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF MOTION TO STRIKE THE DECLARATION OF JON WINICK
AND MOTION TO EXCLUDE JON WINICK FROM TESTIFYING AT TRIAL**

Plaintiff, Southern Financial Group, LLC ("SFG"), respectfully submits this memorandum in support of its motion to strike the Declaration of Jon Winick (Dkt. 16) for use for any purpose in this case, and to exclude him from testifying at trial. This memorandum is accompanied by the Affidavit of Zach Whitney filed herewith.

**I. INTRODUCTION: THE OPINIONS OF JONATHAN WINICK ARE INADMISSIBLE**

As confirmed at his deposition, Jonathan Winick's ("Winick")[1] report is rife with inadmissible legal conclusions, which he is not competent to provide, and "loan sale industry" opinions, which are not relevant to this dispute. He improperly opined as to what McFarland State Bank ("McFarland") knew about the collateral securing the loans, the scope of defined terms included in the Loan Sale Agreement, whether McFarland acted in good faith, SFG's duties under the contract, and SFG's damages.

---

[1] Jonathan Winick's deposition occurred on July 19, 2013, and the transcript was provided to SFG on July 26, 2013.

Although the parties agree that the Loan Sale Agreement is an integrated contract (Dkt. 34, p. 2), McFarland offers Winick's opinions in attempt to avoid contract language and express warranty law. But his opinions are in no way helpful to the trier of fact in either understanding the evidence or determining a fact in issue. Accordingly, the Court should disregard Winick's report in its consideration of the summary judgment motions previously filed[2] and Winick should be excluded from testifying at trial in this matter.

## II. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence, which sets forth the standard courts must employ in determining whether a witness may offer opinions as an expert, reads as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The trial court must perform a gatekeeping function to ensure that all expert testimony is relevant and reliable. *National Football League Prop., Inc. v. Prostyle, Inc.*, 57 F. Supp. 2d 665, 668 (E.D. Wis. 1999). A court must determine whether the expert is qualified in the relevant field and examine the methodology the expert has used in reaching his conclusions. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). The purpose of this gatekeeping function is "to make certain that an expert, whether basing testimony upon professional studies or personal

---

[2] McFarland acknowledged the irrelevance of Winick's opinions when it submitted to the Court that, "[t]he admissibility of an expert witness's opinions as to the background of a unique industry are for the Court to decide, though none of that background, nor Mr. Winick's testimony, is integral to [McFarland]'s summary judgment motion." (Dkt. 34, p. 2 n.1 (emphasis supplied.)) Despite this recognition, McFarland largely builds its summary judgment arguments around the opinions included in Winick's report. (Dkt. 15, pp. 2-3, 22.)

experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 1176 (1999). A trial judge has broad latitude in deciding how to test an expert's reliability. *Id.*

Certain expert opinions, however, are strictly off limits. Chief among those are legal conclusions. It is well recognized "that expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible." *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003); *accord United States v. Sinclair*, 74 F.3d 753, 757 n.1 (7th Cir. 1996). Where "legal" testimony is permissible—such as when a witness is called to testify on the probable meaning of an ambiguous contractual term (which is not an issue before this Court)—only experts with the proper legal background may offer such testimony. *In re: Ocean Bank*, 481 F. Supp. 2d 892, 898 (N.D. Ill. 2007) (citing *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F. 2d 357, 365-66 (7th Cir. 1990)).

The courts do not need expert opinions on purely legal issues that provide little more than subjective legal conclusions. *Cousins Submarines, Inc. v. Federal Ins. Co.*, 2013 WL 494163, 13 (E.D. Wis. 2013). As Judge Stadtmueller aptly pointed out, "[t]he Court is perfectly able to analyze the law applicable to the claims in this case . . . it does not need a separate expert providing what is essentially a separate legal brief to make its legal determinations, here." *Id.*

### III. ARGUMENT

A. **Winick's Report Contains Inadmissible Legal Opinions and Conclusions**

Winick is not a lawyer. (Winick Dep. 153:22-23.) Winick has no legal training. (Winick Dep. 94:1-2.) He was not asked to provide a legal opinion. (Winick Dep. 148:20-21.)

3

Nor, by his account, does he have an opinion about what legal obligations SFG had pursuant to the Loan Sale Agreement. (Winick Dep. 148:24-25.) Winick was not relying on legal principles when he drafted his report. (Winick Dep. 160:12-14.) Nonetheless, Winick's report is filled with opinions on ultimate legal issues that exceed his expertise and trespass into the Court's exclusive domain.

### 1. Winick's opinion that McFarland was "consistently uncertain" of the collateral securing the loan portfolio it sold to SFG is an inadmissible legal opinion and factually inaccurate. (Dkt. 16-1, pp. 9, 11, 14.)

In an attempt to provide an innocent explanation for McFarland's misrepresentations about the collateral securing the loans, and to portray McFarland's breach of warranty in the best possible light, Winick opined that McFarland was consistently uncertain of what collateral secured the loan portfolio. (Dkt. 16-1, pp. 9, 11, 14.) This is an opinion about McFarland's knowledge. Yet Winick admitted during his deposition that he has never studied what constitutes "knowledge" under the law, that he could not define "actual knowledge" or "constructive knowledge," and that he could not recollect ever reviewing any statutes, textbooks, treatises or case law relating to the subject. (Winick Dep. 94:3-96:15.) Winick simply does not qualify as an expert to offer an opinion as to what McFarland legally "knew," and his opinion is not remotely helpful to the trier of fact. *See* Fed. R. Evid. 702(a). Even if he possessed the requisite qualifications (which he does not), it is improper for his opinion to be offered for such a legal conclusion. *Good Shepherd*, 323 F.3d at 564.

More troubling, Winick's overly broad and inaccurate opinion—that McFarland was "consistently uncertain" about the collateral securing the loans—contradicts the factual record. Winick testified that, according to the records he reviewed, as of October 14, 2011, McFarland

4

knew that the loans were secured by only ten condominiums and four townhouses, and that 731 Lois Drive had been sold. (Winick Dep. 102:4-103:11.) Winick disavowed his own "consistently uncertain" opinion when he testified that there was no question after October 14, 2011, that McFarland knew that sixteen (16) properties were collateral for the loans it ultimately sold to SFG. (Winick Dep. 106:1-10.) Winick further testified that he did not review any materials or communications from McFarland created after that date that contradicted the accurate information contained in the McFarland's October 14, 2011, email. (Winick Dep. 114:4-116:3.) Having no basis in fact, his opinion is inadmissible. Fed. R. Evid. 702(b).

**2. Winick's opinion that an email from McFarland to Mission Capital Advisors, LLC falls within the definition of "Due Diligence Materials" found in the Loan Sale Agreement is an improper legal conclusion. (Dkt. 16-1, pp. 9, 15.)**

Here again, Winick admitted at his deposition that he is not qualified to offer such a legal opinion. (Winick Dep. 154:2-5.) Nor does the law allow an expert to provide such a legal opinion. *In re: Ocean Bank*, 481 F. Supp. 2d at 898.

Although Winick recognized that the loan sale was controlled by the contract (Winick Dep. 160:18-161:4), Winick admitted that his opinion contradicts the language of the Loan Sale Agreement. (Winick Dep. 157:3-15.) It therefore also lacks the necessary factual basis for admissibility. Fed. R. Evid. 702(b).

**3. Winick's opinion that McFarland acted in "good faith" is another inadmissible legal conclusion that also lacks a basis in fact. (Winick Dep. 155:24-25.)**

During his deposition, Winick attempted to downplay the fact that he was rendering a legal opinion when he opined that the email from McFarland "was included in the broad definition of 'Due Diligence Materials' found in the loan sale agreement." (Dkt. 16-1, pp. 9, 15.)

5

As he explained while testifying, "that section was related to good faith. And I did not think that this bank was trying to trick your client deliberately." (Winick Dep. 157:16-18.) This opinion draws a host of objections, not the least of which is that it, too, is a legal conclusion, to which Winick is neither qualified (Winick Dep. 157:21-158:13), nor permitted, to testify. *Good Shepherd*, 323 F.3d at 564.

But of even greater concern is the factual disregard demonstrated by his opinion. Winick either deliberately or recklessly ignored the evidence at his disposal relating to the history of the Loan Sale Agreement. Winick testified that his primary business contact with Godfrey & Kahn, S.C. ("Godfrey") was Jason Kuwayama ("Kuwayama"), a Godfrey attorney. (Winick Dep. 35:3-36:1.) Winick testified that Kuwayama "was certainly involved in the creation of the [Loan Sale A]greement" (Winick Dep. 58:8-9), and that Kuwayama "played a role in the propagation and popularization of this loan sale-type agreement in the loan sale industry space." (Winick Dep. 53:8-11.) Winick also stated that he engaged in conversations with Kuwayama where they discussed the present dispute (Winick Dep. 51:7-8), but Winick denied that any of the conversations were related to the drafting of the agreement. (Winick Dep. 58:19-59:4.)

Had Winick actually conducted a proper investigation of the history of the Loan Sale Agreement and based his deposition testimony on sufficient facts as required by Rule 702(b), he would have discovered that the contract was designed by McFarland's attorneys to provide illusory warranties. At its deposition,[3] Godfrey testified that it represented McFarland during the loan sale. (Godfrey Dep. 57:3-5.) Godfrey testified that the Loan Sale Agreement was ultimately derived from a "master form" sale agreement that Kuwayama drafted from scratch in roughly September of 2007, about four or five months after he became an attorney. (Godfrey

---

[3] Godfrey & Kahn, S.C.'s deposition occurred on August 1, 2013, and the transcript was provided to SFG on August 7, 2013.

Dep. 50:10-54:17.) Godfrey admitted that the warranty language contained in Article 6.2.(h) of the Loan Sale Agreement came from the master form created by Kuwayama. (Godfrey Dep. 65:23-66:6.) Godfrey asserted that the purpose of Article 6.2.(h) was "to say that as except as otherwise disclosed, the loan documents that you're receiving are the loan documents that are the current enforceable loan documents." (Godfrey Dep. 68:9-15.) Godfrey admitted that the representation contained in 6.2.(h)—that "except as disclosed in the due diligence materials, no material portion of the collateral was released from the lien of any loan document and no instrument of release, cancellation or satisfaction was executed"—was untrue in the loan sale to SFG. (Godfrey Dep. 123:9-124:8.) Godfrey also understood that the representation in Article 6.2.(h) would have been true had McFarland disclosed the five mortgage satisfactions relating to the three released properties at issue. (Godfrey Dep. 124:12-19.)

Despite Godfrey's recognition that the purpose of Article 6.2.(h) is to ensure the seller's disclosure of "the current enforceable loan documents" (Godfrey Dep. 68:9-15), Godfrey repeatedly asserted that there was no requirement that McFarland disclose mortgage satisfactions pursuant to the terms of the Loan Sale Agreement. (Godfrey Dep. 105:4-16, 106:8-108:5, 110:3-22.) In fact, Godfrey had the audacity to testify that McFarland was not obligated to disclose <u>any</u> loan documents under the terms of the Loan Sale Agreement. (Godfrey Dep. 112:13-18.) If Godfrey's interpretation of the Loan Sale Agreement were adopted by the Court, it would amount to legalized fraud and render over 100 years of warranty law moot. *See*, *e.g.*, *Austin v. Nickerson*, 21 Wis. 542, 544 (1867) (holding that where seller expressly warrants his horse as "in every way sound, true, kind, gentle and quiet in harness" seller was "bound to make good the assertion or representation in regard to the horse").

7

It is apparent that Godfrey, acting as McFarland's agent, intended to draft the Loan Sale Agreement in such a manner as to make McFarland's warranties contained therein meaningless. Despite his conversations with Kuwayama wherein they discussed this case, and his close working relationship with Godfrey, Winick utterly failed to consider these facts in arriving at his conclusion about McFarland's purported "good faith." This is yet another example of Winick's opinion lacking a basis in fact as required. Fed. R. Evid. 702(b). It is, therefore, inadmissible.

### 4. Winick's opinion that SFG "should have discovered the status of the collateral in its due diligence" is both irrelevant and an inadmissible legal opinion. (Dkt. 16-1 pp. 9, 15.)

Winick was also quick in his report to blame to SFG for not discovering the mortgage satisfactions itself. (Dkt. 16-1 pp. 9, 15). Aside from being irrelevant under Rule 401, because this opinion is of no consequence where, as here, the seller makes an express warranty, his opinion of SFG's duties under the Loan Sale Agreement amounted to another inadmissible legal conclusion, which even Winick agreed he was not qualified to provide. (Winick Dep. 148:20-25; 165:25-166:9.) Such a legal opinion, of course, is not permitted by law. *Cousins Submarines*, 2013 WL 494163, 13.

### 5. Winick's opinion that SFG "suffered no actual damages" is an inadmissible legal conclusion completely devoid of legal basis under Wisconsin law. (Dkt. 16-1 pp. 10, 27.)

Winick opined that SFG suffered no damages despite his complete lack of training or education on the law of damages, consequential damages included. (Winick Dep. 196:24-197:5.) Indeed, Winick is not familiar with the legal concept of "expectancy damages." (Winick Dep. 196:18-20.) This is more than a case of Winick's unfamiliarity with legal terminology; at no

8

time did he consider what damages were available to SFG under Wisconsin law when he conducted his analysis. (Winick Dep. 200:2-6, 202:16-24.)[4]

As is true with his other legal opinions, Winick not only lacks the qualifications to have opined about the existence of SFG's damages as he did in his report, the law forbids him from doing so; "Federal Rules of Evidence 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of a case." *Sinclair*, 74 F.3d at 757 n.1. The legal issue of damages will determine the outcome of this case, and the Court is perfectly capable of conducting the proper analysis. It does not need a hired gun—who literally knows nothing about the law of damages—to assist in this endeavor. *Cousins Submarines*, 2013 WL 494163, 13. The Court should disregard this attempt by McFarland to employ its expert to encroach on legal questions that should be left, exclusively, to the Court's determination.

### B. Winick's "Industry Practice" Opinions are Inadmissible and Irrelevant

In its motion for summary judgment, McFarland relies heavily on the "Loan Sale Industry Overview" that Winick included in his report (Dkt. 16-1, pp. 6-8), to support its argument that the loan portfolio was sold to SFG "on an as-is basis." (Dkt. 15, pp. 2-3.) Winick opined in his report on what "generally" and "typically" occurs during a sale of distressed assets in the loan sale industry. (*See*, *e.g.*, Dkt. 16-1, p. 7.) McFarland offers Winick's "industry practice" opinions to avoid the consequences of its express warranties: McFarland essentially argues that, according to industry practices, "SFG bargained for a grab-bag of debt about which it was their responsibility to uncover the details . . . ." (Dkt. 15, p. 22.) But even Winick

---

[4] Winick also contradicted his opinion that SFG suffered no damages. He testified that SFG would have "achieved a better return on their investment if they had three additional properties" (Winick Dep. 182:22-24), and that a $400,000 loss due to the three properties not being collateral for the loans is a reasonable figure. (Winick Dep. 183:15-184:7.)

9

recognized during his deposition that the transaction was controlled by the language of the Loan Sale Agreement. (Winick Dep. 160:18-161:3).

It is undisputed that the Loan Sale Agreement is an integrated contract. (Dkt. 34, p. 2.) In conjunction with the parol evidence rule, integration clauses bar the introduction of extrinsic evidence to vary or contradict the terms of a written contract. *Ziegler Co. v. Rexnord, Inc.*, 139 Wis. 2d 593, 608-09 n.11, 407 N.W.2d 873, 880 (1987); *see also Town Bank v. City Real Estate Development, LLC*, 2010 WI 134, ¶ 39, 330 Wis. 2d 340, 360, 793 N.W.2d 476, 486 (holding that absent ambiguity, where a contract contains an integration clause, "the court's attempt to determine the parties' intent ends with the language of the contract, without resort to extrinsic evidence"). Winick's opinion that "[i]n the sale of distressed assets, the transaction is necessarily an 'As is/Where is' transaction with limited representations and warranties" (Dkt. 16-1, p. 7), possess no probative value, as it cannot subsume the express warranties McFarland made in the Loan Sale Agreement. McFarland's attempts to use Winick's industry practice opinions to circumvent its express warranties must be rejected. They are irrelevant and inadmissible, and should be disregarded by the Court. *See* Fed. R. Evid. 401.

## IV. CONCLUSION

McFarland has turned to the opinions of an expert where it lacks the legal and factual basis to avoid the consequences of its express warranties. It is improper, however, for McFarland to submit expert opinions on purely legal issues, and McFarland cannot rely on industry practices that contradict its express warranties in the Loan Sale Agreement. Winick's opinions as to what McFarland knew about the collateral, how defined terms in the contract should be applied, McFarland's purported good faith, SFG's duties, and damages, do not assist

10

the trier of fact in understanding the evidence or determining a fact in issue. They are irrelevant, under Rule 401, and fall far short of meeting the standard for expert testimony set forth in Rule 702. Winick's opinions are inadmissible. His Declaration should be stricken from the record and he should be excluded from testifying should this matter go to trial.

Dated: August 13, 2013.

*/s Zach S. Whitney*
Robert L. Gegios
WI State Bar No. 1002906
Zach S. Whitney
WI State Bar No. 1046655
KOHNER, MANN & KAILAS, S.C.
4650 North Port Washington Road
Milwaukee, WI 53212
Ph: 414-962-5110
Fax: 414-962-8725
rgegios@kmksc.com
zwhitney@kmksc.com
***Attorneys for Plaintiff Southern Financial Group, LLC.***

11