# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SOUTHERN FINANCIAL GROUP, LLC,

    **Plaintiff,**

    **v.**                                                  Case No. 12-CV-848

MCFARLAND STATE BANK,

    **Defendant.**

## DECISION AND ORDER ON PLAINTIFF'S AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

This action arises out of a Loan Sale Agreement (the "Agreement") between the plaintiff, Southern Financial Group, LLC, ("Southern Financial") and the defendant, McFarland State Bank ("McFarland"). Southern Financial alleges that McFarland breached the Agreement when it failed to disclose the sale and release of certain mortgages securing several of the loans Southern Financial purchased. Southern Financial further alleges McFarland breached express warranties McFarland made to Southern Financial in the Agreement, as well as breached its implied duty of good faith and fair dealing. Finally, Southern Financial alleges unjust enrichment.

Both parties have filed motions for summary judgment. Southern Financial moves for summary judgment on its breach of warranty claim. McFarland moves to dismiss plaintiff's complaint. For the reasons that follow, the plaintiff's motion for summary judgment is denied and the defendant's motion for summary judgment is granted.[1]

---

[1] Plaintiff has also filed a motion to strike the declaration of Jon Winick and a motion to exclude Winick from testifying at trial. (Docket # 39.) Because the agreement is clear and unambiguous, Winick's declaration is unnecessary for purposes of interpreting the contract and was not considered. Thus, the Court grants the motion to strike Winick's declaration. The motion to exclude Winick's testimony at trial is denied as moot.

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc.,Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## UNDISPUTED FACTS

McFarland is a Wisconsin state-chartered bank. (Pl.'s Proposed Findings of Fact ("Pl.'s PFOF") ¶ 1, Docket # 22 and Def.'s Response to Pl.'s PFOF ("Def.'s Resp.") ¶ 1, Docket # 29.)

Southern Financial is a Texas limited liability company in the business of investing in distressed assets. (Pl.'s PFOF ¶ 2 and Def.'s Resp. ¶ 2.) This lawsuit arises from Southern Financial's purchase of loans from McFarland in a loan sale.

On January 28, 2011, McFarland acquired assets formerly held by Evergreen State Bank. (Def.'s Proposed Findings of Fact ("Def.'s PFOF") ¶ 14, Docket # 19 and Pl.'s Response to Def.'s PFOF ("Pl.'s Resp.") ¶ 14, Docket # 27.) Among those assets were eight loans that McFarland later sold to Southern Financial. (Pl.'s PFOF ¶ 4 and Def.'s Resp. ¶4.) McFarland engaged Mission Capital Advisors, LLC to act as McFarland's sale advisor and loan sale agent beginning on September 21, 2011. (Pl.'s PFOF ¶ 10 and Def.'s Resp. ¶ 10.) McFarland provided Mission Capital with documents from the loan files for the loans, including notes, mortgages and title work. (Pl.'s PFOF ¶ 11 and Def.'s Resp. ¶ 11.) Mission Capital used the information supplied by McFarland to create an asset summary for the purpose of marketing the loans. (Pl.'s PFOF ¶ 12 and Def.'s Resp. ¶ 12.) The asset summary contained information related to the real estate collateral securing the loans. (Pl.'s PFOF ¶¶ 13-17 and Def.'s Resp. ¶¶ 13-17.) The asset summary contained photographs of the collateral, maps showing the location of the collateral, floor plan diagrams of the collateral, and commentary describing the collateral properties. (Pl.'s PFOF ¶ 14 and Def.'s Resp. ¶ 14.)

Mission Capital sent the pages of the asset summary containing a draft of the collateral commentary to McFarland for comment and review on October 10, 2011. (Pl.'s PFOF ¶ 18 and Def.'s Resp. ¶ 18.) The asset summary lists information for eight loans. (Declaration of Andrew S. Oettinger ("Oettinger Decl.") ¶ 6, Ex. E at 5, Docket # 18-5.) In the "collateral commentary" section of the asset summary, there is a description of nineteen properties as collateral for the listed loans. (Oettinger Decl. ¶ 6, Ex. E at 6.) However, when the asset summary was distributed to Southern Financial, it contained incorrect information, (Deposition of McFarland "McFarland Dep.,"

Affidavit of Zach Whitney ("Whitney Aff.") ¶ 2, Ex. A at 121, Docket # 23 and 23-1) namely, the mortgages had been satisfied on three of the identified properties. (Pl.'s PFOF ¶¶ 24-26 and Def.'s Resp. ¶¶ 24-26.)

Four of the five mortgage satisfactions at issue were executed by Paul Mumm, who was employed as Senior Vice President at Evergreen State Bank and handled the loans at issue while at Evergreen. (Declaration of Paul Mumm ("Mumm Decl.") ¶¶ 2, 12 and Exs. B, C, D, and E.) Mumm became a special assets manager for McFarland on March 14, 2011. (Mumm Decl. ¶ 11.) The remaining mortgage satisfaction at issue was executed by James Walker, McFarland's Executive Vice President. (Pl.'s PFOF ¶ 43 and Def.'s Resp. ¶ 43.) The information contained in the Due Diligence Materials (which includes the collateral documents) that Southern Financial received from McFarland influenced its decision to participate and submit a bid for the loans at issue. (Pl.'s PFOF ¶ 51 and Def.'s Resp. ¶ 51.) McFarland and Southern Financial entered into the Agreement on November 16, 2011 and Southern Financial paid $1,273,974.00 for the loans. (Pl.'s PFOF ¶¶ 55, 58 and Def.'s Resp. ¶¶ 55, 58.) After the Loan Sale Closing, Southern Financial learned of the sale of certain collateral securing the loans Southern Financial purchased. (Pl.'s PFOF ¶ 61 and Def.'s Resp. ¶ 61.)

## DISCUSSION

At the heart of this case are competing provisions in the Loan Sale Agreement. Southern Financial argues that McFarland represented that the promissory notes it sold to Southern Financial were secured by mortgages on nineteen properties. Southern Financial argues that in the Loan Agreement McFarland warranted that it had disclosed to Southern Financial all instruments of satisfaction and release related to the mortgages on the nineteen properties represented as collateral.

- 4 -

McFarland , however, failed to disclose the mortgage satisfactions related to three of the properties. Southern Financial relies on Section 6.2(h) of the Agreement, which states:

> (h) <u>No Modification</u>. The Due Diligence Materials contain true and correct copies of Loan Documents in the possession of Seller and now in effect with respect to each Loan. Except as set forth in the Due Diligence Materials, neither Seller nor, to Seller's knowledge, any prior holder of the Loan has modified any Note or Loan Document or otherwise satisfied, canceled, extended or subordinated such Note or Loan Document, in whole or in part. Except as disclosed in the Due Diligence Materials, no material portion of the Collateral was released from the lien of any Loan Document and no instrument of release, cancellation or satisfaction was executed[.]

(Oettinger Decl., ¶ 4, Ex. C.)

McFarland does not dispute that the information on the three properties was incorrect at the time of the sale. However, it argues that the accuracy and completeness of the information was disclaimed. McFarland relies on several clauses it has characterized as "no-reliance" clauses in the Agreement. Specifically, Sections 2.1(e)-(f), which state, in relevant part:

> (e) Buyer is solely responsible for making its own independent investigation of the Loan Files. Buyer expressly acknowledges that Seller urged, invited, directed, and provided an opportunity to Buyer to independently investigate and examine the Loan Files . . . and Buyer has become fully familiar with the status thereof. Buyer acknowledges that material information and documentation might be missing from the Due Diligence Materials, which documentation, if known to the Buyer, could have an impact upon the perceived, apparent or actual value, merits and risks of the Loans; <u>provided, however</u>, that if any such material information or documentation becomes known to Seller, Seller or Sale Advisor shall promptly deliver or distribute the same to Buyer.
>
> (f) All information and records provided to Buyer have been provided for informational purposes only as an accommodation to Buyer, and the risk of any inaccuracy, incompleteness, or deficiency in any part of such information and records shall be borne exclusively by Buyer . . . . Except as expressly set forth herein, neither Seller nor a Seller-Related Party makes any representation or warranty, whether express or implied, of any type, kind, character or nature whatsoever, as to the content, accuracy, or completeness of any such records.

And Sections 5.1(e)-(f) which state, in relevant part:

- 5 -

(e) <u>Examination of Loans Being Purchased</u>. Buyer has examined, investigated and reviewed all documents and records that Buyer deems necessary and appropriate in making its decision to purchase the Loans. Buyer acknowledges that Seller has not made any representations or warranties concerning the collectability of the Loans or the value of the Collateral.

(f) <u>Independent Evaluation</u>. Buyer has made and relied upon its own evaluation . . . and Buyer has not relied upon any oral or written information or statements from either Seller or Sale Advisor, other than as expressly set forth in this Agreement.

In this Court's view, this case is governed by well-established principles of contract interpretation. The Agreement contains a choice of law provision specifying Wisconsin law applies (Oettinger Decl., ¶ 4, Ex. C, Section 10.9) and the parties do not dispute that Wisconsin law governs plaintiff's claim. *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir.2008) ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits."). Under Wisconsin law, when construing a contract, the court must look first to the language of the document to ascertain the intent of the parties. *Bank of Barron v. Gieseke*, 169 Wis. 2d 437, 455, 485 N.W.2d 426, 432 (Ct. App.1992). Where the language is unambiguous, the contract is construed as it stands, even if the parties themselves have placed a different construction on it. *Id.*; *Schmitz v. Grudzinski*, 141 Wis. 2d 867, 871, 416 N.W.2d 639, 641 (Ct. App.1987). In other words, clear contractual language does not become ambiguous simply because the parties argue different interpretations. Accordingly, a court may not use the mechanism of construction to revise an unambiguous contract in order to relieve a party from disadvantageous terms to which he or she has agreed. *Old Tuckaway Assoc. Ltd. v. City of Greenfield*, 180 Wis. 2d 254, 280-81, 509 N.W.2d 323, 333 (Ct. App. 1993). Contractual language is ambiguous only when it is fairly and reasonably susceptible to more than one construction. *Yee v. Guiffre*, 176 Wis. 2d 189, 193, 499 N.W.2d 926, 927 (Ct. App. 1993).

Additionally, courts must read contracts to give reasonable meaning to each provision and avoid a construction that renders portions of a contract meaningless. *Isermann v. MBL Life Assur. Corp.*, 231 Wis. 2d 136, 153, 605 N.W.2d 210, 217 (Ct. App. 1999); *see also Jones v. Jenkins*, 88 Wis. 2d 712, 722-23, 277 N.W.2d 815, 819 (1979) (finding that when there is an apparent conflict between contractual provisions, the court should strive to construe the contract as a whole and give meaning to all of its clauses). Where there is an apparent conflict between a general and a specific provision, the latter controls. *Isermann*, 231 Wis. 2d at 153, 605 N.W.2d at 217. If possible, contradictory statements in a contract must be harmonized; but where it is impossible to give meaning to both parts, the court must determine which is to be given effect. *Id.* at 154, 605 N.W.2d at 217.

Applying these principles to the present case, the provisions of the Agreement relied upon by each party can be harmonized. While Southern Financial agreed in Sections 2.1(e) and 5.1(e) to conduct its own investigation of the Loan Files generally, this does not disclaim the specific warranty on which Southern Financial relies in Section 6.2(h). Further, the language of Sections 2.1(f) and 5.1(f) specifically states that the disclaimer of warranties does not include those warranties expressly set forth in the Agreement. And in fact, the warranties found in Section 6.2 are warranties expressly set forth in the Agreement. Had the parties intended for a complete disclaimer of warranties with no exceptions, it could have drafted the Agreement as such. A case decided by the Texas Court of Appeals in *C & A Investments, Inc. v. Bonnet Resources Corp.*, 959 S.W.2d 258 (Tex. Ct. App. 1997) is instructive. In *C & A Investments*, the plaintiff was a sophisticated purchaser of real estate assets who contracted to purchase a loan from the defendant. In purchasing the loan, the plaintiff relied on a mistaken statement in a bid document and post-contract statements by the defendant's vice president that the loan was "performing." *Id.* at 259. However, the Loan Sale Agreement contained specific

- 7 -

Case 2:12-cv-00848-NJ    Filed 09/30/13    Page 7 of 15    Document 44

language in which the plaintiff expressly acknowledged that the loan may be subject to default, a pending foreclosure, or petition seeking relief under the Bankruptcy Code. *Id.* at 262. The agreement further stated that the loan was accepted "as is" and "with all faults." *Id.* Thus, although the plaintiff claimed it was relying on statements that the loan was performing, the language the plaintiff agreed to in the contract expressly acknowledged that the loan may not be performing. In other words, the agreement disclaimed the very warranty on which the plaintiff claimed to rely.

In contrast, none of the disclaimers in the Agreement disclaimed the express warranty on which Southern Financial relied. In fact, the warranty disclaimer excepted the express warranties found in Section 6.2. Consequently, McFarland advocates an interpretation of the contract that renders Section 6.2 meaningless, a construction courts must avoid. *See Isermann*, 231 Wis. 2d at 153, 605 N.W.2d at 217. Southern Financial relied on an express warranty in the Agreement that "no material portion of the Collateral was released from the lien of any Loan Document and no instrument of release, cancellation or satisfaction was executed." McFarland does not dispute that the information regarding the collateral on the three loans in question was stale by the time the loan sale was complete with Southern Financial. (Def.'s Br. in Supp. of Summ. J. at 17, Docket # 15.) McFarland expressly warranted that as of the date of the Agreement and as of the closing date, no material portion of the collateral was released from the lien of any of the Loan Documents and no instrument of release was executed. McFarland breached this warranty.

Although there was a breach of the warranty, the analysis does not end there. Southern Financial must also show it suffered damages. *Pasko v. City of Milwaukee*, 222 Wis. 2d 274, 279, 588 N.W.2d 642, 644 (Ct. App. 1998) ("In evaluating a breach of contract claim, a court must determine whether a valid contract exists, whether a party has violated its terms, and whether any such

violation is material such that it has resulted in damages."). Southern Financial argues it is entitled to its lost profits – profits it would have made on the three collateral properties. Southern Financial states that after taxes, fees, and costs are deducted, there is very little deviation in the percentage of the sale price that it takes as proceeds for the sale of collateral and, on average, it takes 82.5% of the sale price as proceeds. (Pl.'s PFOF ¶ 76.) Because the fair market value of the three properties Southern Financial should have received as collateral have a combined fair market value of $469,000.00, Southern Financial argues that it suffered lost profits equaling $386,925.00. (Pl.'s PFOF ¶¶ 78-79.)

On the question of damages, the Court must again turn to the language of the unambiguous contract. The Agreement contains a remedies provision in Section 6.3. Significantly, the provision states that "[n]either party shall be liable to the other party for any consequential, special or punitive damages." (Oettinger Decl., ¶ 4, Ex. C, Section 6.3.) The Agreement states that the warranty contained in Section 6.2(h) is a "Non-Monetary Representation or Warranty." The Agreement further provides:

> (b) <u>Sole Remedy for Breach of Non-Monetary Representations or Warranties</u>. If within sixty (60) calendar days after the Closing Date, the Buyer discovers that Seller breached any Non-Monetary Representation or Warranty set forth in this Agreement, the Buyer shall give written notice to Seller within ten (10) calendar days of the discovery of such breach, and the Seller shall have the right to cure such breach during a period of thirty (30) calendar days after receipt of such notice. If such breach or failure is not duly cured within such thirty (30) day period . . . then Seller shall elect, in its sole discretion to either (i) repurchase such Loan at the Repurchase Price, or (ii) pay to Buyer the Buyer's actual damages directly caused by such breach, up to an amount not exceeding the Repurchase Price. The remedies set forth in this Section 6.3(b) shall be the exclusive remedies of the Buyer for any breach by Seller of a Non-Monetary Representation or Warranty, and the Buyer shall not be entitled to any other rights, remedies or other relief, at law or in equity, for Seller's breach of a Non-Monetary Representation or Warranty set forth in this Agreement.

As it must, Southern Financial acknowledges that the Agreement contains a waiver of

consequential damages and a remedy provision for the breach of warranty. Additionally, Southern Financial does not dispute that the lost profits it seeks are consequential damages. *See Insurance Co. of N. Am. v. Cease Elec., Inc.*, 2004 WI 139, ¶ 31, 276 Wis. 2d 361, 688 N.W.2d 462 (stating that lost profits are a subset of consequential damages). However, Southern Financial argues the remedy provision is unenforceable because (1) McFarland's failure to elect a remedy constitutes waiver; (2) the damages provision fails of its essential purpose; and (3) the provision is unconscionable. The Court finds these arguments unpersuasive.

First, Southern Financial argues McFarland had the sole discretion under the Agreement to choose between three remedies for the breach of warranty, and it has failed to elect a remedy. As such, Southern Financial argues that McFarland waived its right to elect a remedy under the Agreement. (Pl.'s Br. in Supp. of Summ. J. at 10-11, Docket 21.) "[W]aiver in contract law is the intentional relinquishment of a known right." *Sethness–Greenleaf, Inc. v. Green River Corp.*, 65 F.3d 64, 67 (7th Cir.1995). "[W]aiver is frequently limited to minor conditions." *Bank v. Truck Ins. Exch.*, 51 F.3d 736, 739 (7th Cir.1995) (citing 2 E. Allan Farnsworth, Contracts § 8.5, pp. 378–79 (2d ed.1990)). "Unless the right waived is a minor one . . . , why would someone give it up in exchange for nothing?" *Id.* In this case, Southern Financial suggests that McFarland waived one of the most significant provisions of their Agreement. The only evidence Southern Financial presents in support of waiver is McFarland's alleged failure to take action for over a year. However, Southern Financial ignores that while it presented its demand letters to McFarland in January and February of 2012, the demand letters do not ask McFarland to remedy the breach pursuant to the terms of the Agreement. The letters do not ask McFarland to repurchase the loans. (Affidavit of Peter Thyen ("Thyen Aff.") ¶ 8, Exs. 34-35, Docket # 24.) Rather, the February 22, 2012 letter asks for money "damages" in the

- 10 -

amount of $519,900.00 without explanation as to what this number represented or how this number was calculated. (Thyen Aff., Ex. 35.) McFarland responded on March 23, 2012 stating that Southern Financial failed to demonstrate any damages. (Affidavit of Zach Whitney ¶ 6, Ex. E, Docket # 23.) Further, although Southern Financial disputes this fact, McFarland contends that it has been prevented from exercising its contractual right and option to choose between the exclusive remedies by Southern Financial's alleged failure to provide relevant documentation. (Pl.'s PFOF ¶¶ 64-65 and Def.'s Resp. ¶¶ 64-65.) Finally, and most importantly, there is no dispute that the Agreement places no time frame on when McFarland must elect a remedy. (Pl.'s Br. at 11.) On this record, the evidence does not support a finding of waiver.

Next, Southern Financial argues the damages provision in the Agreement is unenforceable because it fails of its essential purpose of making the injured party whole and is unconscionable. As a result, Southern Financial argues consequential damages are available despite the fact the Agreement waives these damages. Specifically, Southern Financial argues the Agreement's remedy fails because under either contractual remedy, the damages are limited to the Repurchase Price, which, as defined in the Agreement, is calculated as the Purchase Price of $1,273,974.00, minus proceeds to Southern Financial (which equal $1,308,163.50 to date), minus diminution in the value of the loans through Southern Financial's actions of selling the collateral. (Oettinger Decl. ¶ 4, Ex. C, Article I; Pl.'s PFOF ¶ 77 and Def.'s Resp. ¶ 77.) As such, Southern Financial contends the exclusive remedy provision provides no damages for McFarland's breach of warranty.

To begin, these arguments are based on Article 2 of the Uniform Commercial Code, as codified in Wis. Stat. § 402.719, and Article 2 of the UCC is inapplicable to this transaction. Nonetheless, even applying UCC principles, Southern Financial has not shown the Agreement's remedies provision fails of its essential purpose. As the Wisconsin Supreme Court has stated, the

- 11 -

essential purpose of any damage award is to make the injured party whole. *Phillips Petroleum Co. v. Bucyrus-Erie Co.*, 131 Wis. 2d 21, 39, 388 N.W.2d 584, 592 (1986). The "failure of essential purpose" cases generally arise in the context of a faulty good and a contract that contains an exclusive remedy of repair or replacement. *See Murray v. Holiday Rambler, Inc.*, 83 Wis. 2d 406, 420, 265 N.W.2d 513, 520 (1978). The purpose of an exclusive remedy of repair or replacement is to give the buyer goods which conform to the contract. *Id.* Thus, when repair or replacement cannot accomplish this purpose, the contract remedy fails of it essential purpose and the buyer can recover other damages, including consequential damages.

Although not relying on the UCC, several courts have similarly found that when a loan sale agreement contains an exclusive remedy provision requiring repurchase and the loans are no longer available for repurchase, money damages are available despite the exclusive remedy provision. For example, Southern Financial cites *Resolution Trust Corp. v. Key Financial Services, Inc.*, 280 F.3d 12 (1st Cir. 2002) in support of its argument for money damages. In *Key Financial*, the agreement at issue contained an exclusive remedy provision in which the seller agreed "upon demand, to repurchase any Mortgage note with respect to which there shall have been a material breach . . . ." *Id.* at 14 n.2. After the discovery of a breach, despite the buyer's demand that the disputed mortgages be repurchased, the seller refused to repurchase the loans. Repurchase became impossible because a number of the loans had gone "off-line," meaning that the mortgages had been removed from the portfolio because of foreclosure or because the interest in the loan had been sold. *Id.* at 15. Thus, the court determined the seller's failure to repurchase the loans "on demand" constituted an independent breach of the agreement, entitling the buyer to pursue general contract remedies. *Id.* at 16.

In determining that the district court was free to make the buyer whole, the First Circuit

considered that had the seller repurchased the loans when the buyer demanded it, the court would not have been faced with the difficult question of how to deal with the off-line loans, which were unavailable for repurchase. *Id.* at 18. Even so, importantly, the court in *Key Financial* only awarded damages equal to the repurchase amount. *Id.* This rationale is in line with other courts that allowed money damages when the repurchase of loans was no longer possible. *See, e.g., MASTR Adjustable Rate Mortgages Trust v. USB Real Estate Securities, Inc.*, No. 12 Civ. 7322, 2013 WL 4399210, at *3 (S.D.N.Y. Aug. 15, 2013); *Orix Real Estate Capital Markets, LLC v. Superior Bank, FSB*, 127 F. Supp. 2d 981, 983 (N.D. Ill. 2000); *but see MASTR Asset Backed Securities Trust v. WMC Mortgage Corp.*, 843 F. Supp. 2d 996, 1001 (D. Minn. Feb. 16, 2012) (finding under the clear terms of the agreement, the sole remedy available was cure, repurchase, or substitution of the defective mortgages and thus the buyer could not recover monetary damages).

Thus, the commonality in the above cited cases is because the loans were no longer available for repurchase, the remedy provision requiring repurchase "failed of its essential purpose." In the present case, the remedy provision of the Agreement allows the buyer to either unwind the deal and recover the money it paid for the loans (by requiring the seller to repurchase the loans at the Repurchase Price), or gives the buyer its actual damages, up to the Repurchase Price. This puts the buyer back into the position it would have been in without the breach. Unlike in the above cited cases, Southern Financial has presented no evidence indicating that repurchase of the loans is no longer possible. Thus, Southern Financial has not shown that the Agreement's remedy provision fails of its essential purpose.

Finally, Southern Financial's argument that the remedy provision is unconscionable also fails. Southern Financial does not dispute that it is in the business of investing in distressed assets and has

- 13 -

purchased more than 150 loans. (Def.'s PFOF ¶¶ 26-27 and Pl.'s Resp. ¶¶ 26-27.) Both parties are sophisticated. Had the parties wished to allow recovery of consequential damages, this could have been included in the Agreement. As previously stated, a court may not use the mechanism of construction to revise an unambiguous contract in order to relieve a party from disadvantageous terms to which he or she has agreed. *Old Tuckaway Assoc. Ltd. v. City of Greenfield*, 180 Wis. 2d at 280-81, 509 N.W.2d at 333.

For these reasons, the remedy provision is enforceable. The provision waiving consequential damages is also enforceable. Further, because there is no dispute that a valid contract exists, Southern Financial's unjust enrichment claim fails. *Greenlee v. Rainbow Action/Realty Co.*, 202 Wis. 2d 653, 671, 553 N.W.2d 257, 265 (Ct. App. 1996) ("The doctrine of unjust enrichment does not apply where the parties have entered into a contract."). As such, the defendant's motion for summary judgment is granted and the plaintiff's claims for breach of contract, breach of warranty, breach of the implied duty of good faith and fair dealing, and unjust enrichment are dismissed.

## CONCLUSION

McFarland and Southern Financial are both sophisticated parties well versed in the sale of distressed assets. The language of the Agreement in dispute in this case is clear and unambiguous. McFarland warranted to Southern Financial that no material portion of the collateral was released. McFarland breached this warranty. However, the parties also agreed that if McFarland breached this warranty, Southern Financial's damages would be limited to either cure, repurchase of the loans, or actual damages up to the repurchase price. The parties agreed that Southern Financial was not entitled to consequential damages. Southern Financial now asks the court to award consequential damages. These damages are unavailable under the express terms of the Agreement Southern Financial signed. As such, McFarland is entitled to summary judgment on all of the plaintiff's claims.

- 14 -

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's Motion for Summary Judgment (Docket # 20) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendant's Motion for Summary Judgment (Docket # 14) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's Motion to Strike the Declaration of Jon Winick is **GRANTED** (Docket # 38) and plaintiff's Motion *in limine* to exclude Jon Winick from testifying at trial (Docket # 38) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 30th day of September, 2013.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge